Michael S. Davis
Anthony I. Giacobbe, Jr.
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

*Attorneys for Petitioner*
*American Home Assurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY,<br><br>                              Petitioner,<br><br>                     - and -<br><br>CIRCLE L. ROOFING, INC.,<br><br>                              Respondent. | Case No.: 08 CV 0874 (RJS) |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION OF AMERICAN HOME ASSURANCE COMPANY TO COMPEL ARBITRATION

### PRELIMINARY STATEMENT

American Home Assurance Company ("American Home"), on behalf of itself and each of the related insurers that provided coverage to Respondent Circle L. Roofing, Inc. ("Respondent"), submits this Memorandum of Law in support of its petition (the "Petition") to compel arbitration[1] requiring Respondent to proceed with arbitration.

---

[1]  Defined terms and exhibits referred to herein are annexed to American Home's Petition to Compel Arbitration.

## FACTUAL BACKGROUND

### A.    The Insurance Program and the Parties

American Home provided insurance coverage to Respondent and each of its subsidiaries, affiliated or associated organizations that are included as named insureds under any of the policies issued pursuant to an insurance program (the "Insurance Program") beginning as of November 1, 2004.

The Insurance Program is governed by a Payment Agreement effective as of November 1, 2004 (the "2004 Payment Agreement"), a 2004 addendum to the Payment Agreement (the "2004 Addendum"), and certain addenda and schedules to the Payment Agreement (together, the "Insurance Program Agreements").

The 2004 Payment Agreement[2] expressly provides that it governs the policies and schedules, including any renewals thereof, as follows:

> This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement. Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

Exhibit A at A003.

---

[2]  The parties executed another Payment Agreement effective as of January 26, 2006 (the "2006 Payment Agreement"), that contains provisions that are either identical or substantially similar to the provisions to the 2004 Payment Agreement in all material respects. See Exhibit B at B001-B010.

The 2004 Payment Agreement expressly governs the obligations of Respondent to pay premium and collateral to American Home. The section of the Payment Agreement titled "WHAT HAVE YOU AND WE AGREED TO" states:

**We have agreed** to the following:

- to provide *You* insurance and services according to the *Policies* and other agreements; and

- to extend credit to You by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement;

To induce us to agree as above,

**You have agreed** to the following:

- **to pay us all Your Payment Obligation and to perform all Your other obligations according to this Agreement and Schedule for all entities covered by the Policies;**

- **to provide us with collateral according to this Agreement and Schedule;**

Exhibit A at A003 (emphasis added).

"Your Payment Obligation" is defined as:

**"Your Payment Obligation" means the amounts that You must pay us for the Insurance and services in accordance with the terms of the *Policies,* this Agreement, and any similar primary casualty Insurance Policies and agreements with us incurred before the inception date hereof.** Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:

- **the premiums and premium surcharges,**

- ***Deductible Loss Reimbursements,***

- **Any amount that we may have paid on Your behalf because of any occurrence, accident, offense, claim or suit with respect to which You are a self-insurer,**

- **Any fees, charges, or obligations as shown in the Schedule or as may arise as You and we may agree from time to time.**

**Loss Reserves:** *Your Payment Obligation* includes any portion of the premiums, premiums surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for Loss and *ALAE*. **Those reserves shall include specific reserves on known Losses and *ALAE*, reserves for incurred but not reported Losses and *ALAE*, and reserves for statistically expected development on Losses and *ALAE* that have been reported to us.** Any Loss development factors we apply in determining such reserves will be based on our actuarial evaluation of relevant statistical data including, the extent available and credible, statistical data based upon *Your* cumulative Loss and *ALAE* history.

Exhibit A at A004 (emphasis added).

Although the Policies were terminated, the Program remains in effect and its corresponding payment obligations are ongoing. American Home continues to pay insured claims. And, Respondent's obligation to reimburse American Home for paid claims and to pay premiums, which is in part secured by its ongoing obligation to provide collateral, remains in effect until all payment obligations are settled, as follows:

**This Agreement will end only after You and we have settled and paid all obligations between You and us relating to this Agreement.** Neither You nor we may cancel this Agreement without the other's consent.

Exhibit A at A003 (emphasis added).

The Payment Agreement also expressly governs Respondent's obligation to provide collateral to American Home, as follows:

4

**Collateral Is Required**

***You* must deliver collateral acceptable to us to secure *Your Payment Obligation* at the time(s), in the form(s) and in the amount(s) shown in the *Schedule*.** Subject to the terms of this Agreement, we may apply any collateral we hold in connection with this or any other similar primary casualty insurance *Policies* or agreements to *Your Payment Obligation*.

Exhibit A at A006 (emphasis added).

## B.    The Agreement to Arbitrate

The 2004 Payment Agreement contains a broad arbitration clause that expressly gives the arbitrators jurisdiction over "the entire matter in dispute, including any question as to its arbitrability" (the "Arbitration Clause") as follows:

### HOW WILL DISAGREEMENTS BE RESOLVED?

**What if we disagree about payment due?**

If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay, within the time allowed for payment *You* must:

- give us written particulars about the items with which *You* disagree; and

- pay those items with which *You* do not disagree.

We will review the disputed items promptly and provide *You* with further explanations, details, or corrections. *You* must pay us the correct amounts for the disputed items within 10 days of agreement between *You* and us about their correct amounts. Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration as set forth below. With our written consent, which shall not be unreasonably withheld, *You* may have reasonable additional time to evaluate our response to *Your* written particulars.

So long as *You* are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of *Your Payment Obligation.*

**What about disputes other than disputes about payment due?**

**Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.** *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

**Arbitration Procedures**

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

**How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when file with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

6

The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.

The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. **They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability.** However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.

**Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.

This Section will apply whether that dispute arises before or after termination of this Agreement.

Exhibit A at A008-A009.[3]  The 2004 Addendum specifically provides that:

**How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York. **Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.**

Exhibit A at A013 (emphasis added).[4]

---

[3]  The 2006 Payment Agreement contains the identical Arbitration Clause. See B008-B009.

[4]  The parties executed an Addendum to the Payment Agreement effective January 26, 2006, that contains an identical provision. See B017.

C.    **The Complaint**

Respondent filed a complaint in the United States District Court for the Middle District of Florida, Tampa Division (the "Complaint"), asserting disputes concerning the amount of security American Home is entitled to return. A copy of the Complaint is annexed as Exhibit D. As set forth above, the 2004 Payment Agreement expressly states that it governs the Policies and Schedules.

The allegations in the Complaint relate entirely to Respondent's demand for return of premium and collateral as governed by the Payment Agreement. In Count I, Respondent seeks money damages for the alleged failure to return premiums and security. Count II seeks a declaration that Respondent is entitled to receive a return of premium and security. Count III seeks damages for alleged breach of good faith and for dealing based upon the alleged failure to return premium and security, and Count IV damages for conversion based upon the alleged failure to return premiums and security.

Finally, Respondent selectively omits from its Complaint that it is in default of its obligation to pay premium under the Payment Agreement. Respondent has failed to pay $351,750 due to American Home. The Payment Agreement provides that:

> Default is any of the following:
>
> 1. failure by You or any of Your subsidiaries or affiliates to perform within 5 days after its due date any obligation You or any of Your subsidiaries or affiliates have under this Agreement or any other agreement with us.

Exhibit A at A007. In case of default, among other remedies, American Home may "satisfy Your obligations to us:"

> 7. We may satisfy Your obligations to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of yours received by, pledged to, held by or otherwise available to us in connection with *Your Payment Obligation.* You authorize us after any default to charge any account that You maintain with us in connection with Your *Payment Obligation* in order to satisfy any of *Your* obligations.

Exhibit A at A008.

## D.     The Preliminary Injunction Motion

After filing its Complaint, Respondent also filed a motion ("Preliminary Injunction Motion") in the Florida action seeking a Preliminary Injunction. A copy of the Preliminary Injunction Motion is included as Exhibit E. This Preliminary Injunction Motion seeks the same relief in the Complaint and is also subject to arbitration.


## ARGUMENT

## I.

## BY AGREEMENT THIS PROCEEDING TO COMPEL ARBITRATION MUST BE HEARD IN NEW YORK

Respondent filed its action in Florida. However, under the Insurance Program Agreements, the parties explicitly agreed that:

> Similarly, **any** action or proceeding **concerning arbitrability,** including motions to compel or to stay arbitration, may be brought **only** in a court of competent jurisdiction **in the City, County, and State of New York.**

Exhibit A at A103 (emphasis added). Thus, both American Home and Respondent agreed that a court in New York County – not any other court – must decide "any action or proceeding concerning arbitrability." Id.

Because the Arbitration Clause provides that "**any** action or proceeding **concerning arbitrability**, including motions to compel or stay arbitration may be brought **only** in a court of competent jurisdiction in the City, County and State of New York," this court should enforce the Arbitration Clause as written and decide this motion to compel arbitration before any proceedings are due to take place in the Florida action concerning the disputes alleged in the Complaint.

Respondents' unauthorized filing of the Complaint in Florida cannot usurp this Court's jurisdiction to decide "motions to compel or to stay arbitration" as expressly set forth in the Arbitration Clause. Moreover, American Home has filed a motion to stay the Florida action and now proceeds in this Court, in accordance with the express agreement of the parties. The Florida District Court issued an Order directing that Circle L respond by February 7, 2008 to American Home's motion for a stay and further directed that American Home is not required to respond to Circle L's filings in that Court until that Court issues a decision on American Home's motion for a stay. Accordingly, American Home respectfully requests that this Court decide the motion to compel arbitration on an expedited basis.

II.

## THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION

A.    **The Arbitration Clause Is a Broad Clause and Must Be Enforced**

The 2004 Payment Agreement provides for arbitration of "any other unresolved dispute arising out of this Agreement" and provides that "the arbitrators shall have exclusive jurisdiction over the entire matter in dispute, including the issue of arbitrability." See Exhibit A at A008-A009. This is a broad arbitration agreement, and the Federal Arbitration Act ("FAA") and controlling case law require that this Court enforce this arbitration agreement. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. (Emphasis added.)  The Supreme Court has unambiguously held that this provision of the FAA is to be followed.  Shearson/American Express v. McMahon, 482 U.S. 220, 226-27, 1907 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S.Ct. 1238, 1241 (1985).

Similarly, the Second Circuit has consistently enforced arbitration agreements:

> The FAA, codified at 9 U.S.C. §§ 1-14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Id. § 2. 'There is a strong federal policy favoring arbitration as an alternative means of dispute resolution.' In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.

Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 1994) Citing, Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) and Moses H. Cone Memo. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (any doubts should be resolved in favor of arbitration). See also Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration."); Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1994) (Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" citing Moses H. Cone Mem'l Hosp., supra, at 24-25.)

Fifteen times since its 1983 decision in Moses H. Cone, the Supreme Court has addressed the duty to arbitrate with a party to an arbitration agreement.[5] Each time, the Court

---

[5] Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 469 U.S. 1155, 105 S.Ct. 897 (Mem), 83 L.Ed.2d 914 (1985); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426, (1987); Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d

required arbitration to proceed, even when confronted with a federal statute providing "exclusive" federal court jurisdiction.[6]

The Second Circuit in <u>Louis Dreyfus Negoce S.A.</u> established that when determining whether a particular dispute falls within the scope of an arbitration agreement, this Court must first classify the arbitration clause as broad or narrow. <u>Louis Dreyfus Negoce S.A.</u>, 252 F.3d at 224; <u>Ace Capital Re Overseas Ltd.</u>, 307 F.3d at 30-34. Specifically, this Court must

---

985 (1995); <u>Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER</u>, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); <u>Doctor's Associates, Inc. v. Casarotto</u>, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); <u>Green Tree Financial Corp.-Alabama v. Randolph</u>, 529 U.S. 1052, 120 S.Ct. 1552 (Mem), 146 L.Ed.2d 458 (2000); <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); <u>Green Tree Financial Corp. v. Bazzle</u>, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 2006 U.S. Lexis 1814, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (U.S. 2006). There has been only one case since 1983 where the Supreme Court did not order arbitration. In <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), the Court held that a government agency with enforcement authority would not be required to arbitrate under a contract to which it was not a party.

[6]  <u>Mitsubishi Motors Corp.</u>, 469 U.S. at 628-40 (exclusive jurisdiction of the Sherman Act); <u>Dean Witter</u>, 470 U.S. at 215217 (exclusive jurisdiction of the Securities Exchange Act of 1934); <u>Shearson/American Exp.</u>, 482 U.S. at 227 (exclusive jurisdiction of the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act); <u>Rodriguez de Quijas</u>, 490 U.S. at 482-86 (exclusive jurisdiction of the Securities Exchange Act of 1934).

determine: "whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Louis Dreyfus Negoce S.A., 252 F.3d at 225.

In fact, two other courts in this District have granted similar motions to compel arbitration involving similar insurance programs that contained broad arbitration agreements where the Respondents had filed actions in other states concerning arbitrable disputes. See Raytheon v. Nat'l Union Fire Ins. Co. of Pittsburgh PA, 306 F. Supp. 2d 346 (S.D.N.Y. 2004) and Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc., 2004 U.S. Dist. Lexis 25052 (S.D.N.Y. Dec. 13, 2004). American Home submits that these decisions are persuasive and that the reasoning of these decisions compels arbitration of the disputes asserted in the Complaint.

## III.

## A HEARING ON SHORT NOTICE IS WARRANTED

Section 4 of the FAA states, in part, that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. **Five days**' notice in writing of such application shall be served upon the party in default. (Emphasis added).

9 U.S.C. § 4.

Respondent has specifically filed an application for a preliminary injunction and refused to consent to arbitration.

The disputes asserted in the Complaint indisputably fall within the broad Arbitration Clause. Moreover, even if Respondent disputes arbitrability of the disputes asserted in the Complaint, the Arbitration Clause expressly states that: "They [the arbitrators] shall have jurisdiction over the entire matter in dispute, including any question as to its arbitrability." See Exhibit A at A009.

Accordingly, American Home seeks a hearing on five days' notice pursuant to 9 U.S.C. § 4 determining that the disputes asserted in the Complaint be submitted to arbitration. Given that Respondent has commenced a lawsuit and filed a motion for a preliminary injunction in Florida, this Court should hear this motion to compel arbitration before any proceedings take place in Florida.

## CONCLUSION

American Home respectfully requests that this Court schedule a hearing on five days' notice and then compel Respondent to arbitrate the disputes asserted in the Complaint.

Dated:    New York, New York
          January 24, 2008


ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Michael S. Davis
    Anthony I. Giacobbe, Jr.
    Attorneys for Petitioner
    575 Lexington Avenue
    New York, New York 10022
    (212) 223-0400


517684.v2/10670-001/AIG